## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **RASUL WARREN,** ) | |
| Plaintiff, ) | |
| ) | |
| ) | **Case No.2:21-cv-      -GC** |
| ) | **Hon.:** |
| ) | **Magistrate Judge:** |
| ) | |
| -vs.- ) | |
| ) | |
| **WESTERN GOLF AND** ) | |
| **COUNTY CLUB, AND** ) | |
| **MICHAEL MONTNEY** ) | |
| Defendant. | |

_____/

**MUSSIN & SCANLAND, PLLC**
**SCOTT P. MUSSIN (P66748)**
**BY: JERARD M. SCANLAND (P74992)**
Attorneys for Plaintiff
13351 Reeck Court, Suite 5
Southgate, Michigan 48195
Phone: (734)-282-6037
Fax: (734)-447-5853
JScanland@milawoffices.com

_____/

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

There is no other pending or resolved action
within the jurisdiction of the civil division
of the Federal District Court involving the
parties who are the subject of the complaint.

/s/JERARD M. SCANLAND
**JERARD M. SCANLAND**
**Attorney For Plaintiff**

**COMES NOW THE** Plaintiff, **RASUL WARREN,** through his attorneys the law firm of MUSSIN & SCANLAND, PLLC and by his respective attorney Jerard M. Scanland and in support of Plaintiff's Complaint And Jury Demand, states the following:

## Jurisdiction and Parties

1. This is an action for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq.;* race discrimination due to African American decent, age discrimination, and retaliation in violation of 42 USC § 1981, arising out of Plaintiff's employment relationship with the Defendant.

2. Plaintiff, **RASUL WARREN**, (hereafter "Plaintiff") is a resident of Michigan and resides within the Eastern District of Michigan.

3. Defendant, **MICHAEL MONTNEY,** is a resident of Michigan and resides within the Eastern District of Michigan.

4. Defendant, **WESTERN GOLF AND COUNTRY CLUB** is a Michigan corporation licensed to do business in the Eastern District of Michigan and maintains a principal place of business in the Eastern District of Michigan.

5. Plaintiff making a charge of discrimination with the Michigan Department

Of Civil Rights on October 14, 2020, and not obtaining the relief sought, has timely filed the within lawsuit.

6. The Plaintiff timely files the above claims within (90) days of receipt of the EEOC issued Notice of Right To Sue Letter, which was mailed to him on or about July 2, 2021.

7. The events out of which this controversy arose occurred in the Eastern District of Michigan.

8. The amount in controversy exceeds $75,000.00.

9. This Court has subject matter jurisdiction over this matter pursuant to 28 USC § 1331 and § 1343,and supplemental jurisdiction over the state law claims pursuant to 28 USC §1367 if any exist.

## ADMINISTRATIVE PROCEDURES

10. More than thirty (30) days prior to the institution of this lawsuit, **RASUL WARREN** filed a charge with the Commission alleging violations of the race and age discrimination by Defendant.

11. On July 2, 2021 The Commission issued to Defendant a Notice of Right to Sue letter to the Plaintiff finding that they were not making a determination as to whether further investigation would establish violations of the statute. The Notice is attached to the Complaint.

12. The Letter of Determination was also provided to the Plaintiff.

13. The Plaintiff has timely filed the within cause of action within ninety days of receipt of the aforementioned letter.

## Background Facts

14. Plaintiff began his employment with the Defendant on or about May 1, 2019 and ever since that period of time, her employment service to the Defendant has been exemplary.

15. The Plaintiff is an African American male.

16. The Defendant operates a Country Club in the City of Redford Township, Michigan. Plaintiff was employed with the Defendant as a ground maintenance employee.

17. The Plaintiff was initially hired to operate a lawnmower in an effort to maintain the grounds.

18. The Plaintiff's position later changed to one of maintaining the sand traps on the grounds.

19. The Defendant employs over thirty (30) employees.

20. The Plaintiff's returns to work April 2, 2020, and was informed by his supervisor, Defendant Montney that due to the Covid-19 Pandemic, he was only going to permit those with higher seniority, to return to work.

21. The Plaintiff was on his way home one day and happened to pass by Western Golf and Country Club and noticed several cars belonging to his fellow maintenance employees parked out front.

22. The Plaintiff proceeded to pull into the maintenance building. Plaintiff exited his vehicle and went into the maintenance building in an effort to speak with his supervisor Defendant Montney inquiring as to the reason why he was not asked to return to work.

23. The Plaintiff called his supervisor, however, Defendant Montney did not answer. Another maintenance employee called Defendant Montney on his phone, and he immediately answered.

24. Defendant Montney was informed the Plaintiff desired to speak with him. Defendant Montney's response was to advise the employee to advise Plaintiff he would call him later on his way home.

25. The Plaintiff waited approximately two days for a call from Defendant Montney, however, no phone call was forthcoming.

26. The Plaintiff then proceeded to the golf course in an effort to obtain some answers from Defendant Montney regarding the reason why the Plaintiff was not being permitted to return to work.

27. Sometime at the end of May 2020, the Plaintiff actually spoke to Defendant Montney and was advised during this conversation by Defendant Montney that he was not able to permit his return as there was not enough work.

28. It was at this time an eighteen to twenty-year-old Caucasian appeared operating the very machine the Plaintiff had used less than a year prior.

29. Defendant Montney informed the Plaintiff the individual was only working for the summer.

30. The Plaintiff then approached Michell who at the time was employed as Defendant's Human Resources director inquiring as to why he was not being permitted to return to work.

31. It was after speaking with Michelle, the Plaintiff received a letter from the Defendant Montney advising him there was no work for him. Defendant Montney further advised they would contact him, yet the Plaintiff has never received any phone call.

32. Effectively, Plaintiff's employment with the Defendant has ended and/or Plaintiff has been demoted or his job functions have significantly changed.

## COUNT-I
## Race/Ethnicity Discrimination
## in Violation Of 42 USC Section 1981

33. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 32 above as if set forth in full herein.

34. At all times, Plaintiff was an employee and Defendant was his employers covered by and within the meaning of 42 USC Section 1981.

35. Defendant, MICHAEL MONTNEY treated the Plaintiff differently, harassed him and subjected him to a hostile environment on the basis of his race/African American ethnicity.

36. Defendant Montney was at all times an agent of Western Golf And Country Club.

37. The Defendant treated the Plaintiff differently based on his race. The Plaintiff was the only African American who was employed as a ground's maintenance employee, the only one not permitted to return to work, and his position with the Defendant was given to a younger Caucasian.

38. The Plaintiff was informed by Defendant Montney that as a result of the pandemic, he would only permit employees with greater seniority to return to work.

39. The Plaintiff discovered the statements made by Defendant Montney were untrue as Defendant permitted a younger Caucasian employee to perform the very task that was performed, prior to, by the Plaintiff.

40. The Plaintiff was also treated differently as he was the only employee not permitted to return to work unlike his Caucasian counterparts.

41. The Defendant can claim the Plaintiff was not a very good employee, however, in the short period of time the Plaintiff was working with the Defendant, the Plaintiff was given a raise.

42. The Defendants were predisposed to discriminate against the Plaintiff on he basis of his race/African American ethnicity and acted in accordance with that predisposition.

43. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

44. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected and he, upon information and belief was not provided the same employment opportunities as his Caucasian counterpart.

45. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**WHEREFORE,** Plaintiff prays for the following non-exhaustive relief, Compensatory damages in whatever amount he is found to be entitled; Exemplary and punitive damages in whatever amount he is found to be entitled; A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled; and, an award of interest, costs and reasonable attorney fees.

## COUNT-II
### Retaliation in violation of 42 USC Section 1981

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 above as if set forth in full herein.

47. 42 USC Section 1981 prohibits retaliation against persons who complains about discrimination, which includes ethnic and ancestry discrimination.

48. Plaintiff engaged in activity protected by 42 USC Section 1981 when he complained of and opposed unlawful discrimination and harassment to Defendant's human resources department, more specifically Michelle, inquiring as to why he was not being permitted to return to work. Shortly after, Plaintiff received a letter advising he would be permitted to return to work when work was available. To date, Plaintiff has never been called.

49. Defendants' retaliatory treatment and harassment of Plaintiff as set forth above, including preventing the Plaintiff from returning to work, changing Plaintiff's job functions, upon information and belief, demoting the Plaintiff, and treating him differently than his Caucasian counterparts.

50. The actions of the Defendants was intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

51. As a direct and proximate result of Defendants wrongful acts and omissions, Plaintiff sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**WHEREFORE**, Plaintiff prays for the following non-exhaustive relief, Compensatory damages in whatever amount he is found to be entitled; Exemplary and punitive damages in whatever amount he is found to be entitled; A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled; and, an award of interest, costs and reasonable attorney fees.

## COUNT-III
### National Origin Discrimination in Violation of Title VII

52. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 51 above as if set forth in full herein.

53. At all material times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964 Section 2000-e et. Seq.

54. Defendant by its agents, treated Plaintiff differently, harassed him, and subjected him to a hostile work environment due to Plaintiff's race, African American.

55. Defendant, by its agents, was predisposed to discriminate against Plaintiff on the basis of his national origin and ethnicity and acted in accordance with that predisposition.

56. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

57. The Plaintiff was the only African American employee who was employed by the Defendant and the only employee who was not permitted to return work.

58. The Plaintiff's position was provided to a younger Caucasian employee.

59. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**WHEREFORE,** Plaintiff prays for the following non-exhaustive relief, Compensatory damages in whatever amount he is found to be entitled; Exemplary and punitive damages in whatever amount he is found to be entitled; A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled; and, an award of interest, costs and reasonable attorney fees.

## COUNT-IV
## Unlawful Intentional Age Discrimination
## (Disparate Treatment) in Violation of the ADEA, 29 U.S.C. § 621 et seq.

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 above as if set forth in full herein.

61. The ADEA makes it unlawful for employers and their agents "(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;"

62. The Plaintiff was qualified for the position as a grounds maintenance employee.

63. Following Plaintiff's termination a younger maintenance employee was hired in place of the Plaintiff.

64. The Plaintiff was prevented from returning to work and advised by his supervisor that he was going to allow only those with higher seniority to work.

65. Plaintiff discovered this statement to be untrue when he found what appeared to be an eighteen year old performing the Plaintiff's job.

66. The Defendant's violations of the ADEA were intentional and willful.

67. As a direct and proximate result of the foregoing violations of the ADEA, Plaintiff has sustained economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest of those wages and other benefits, amongst other damage.

**WHEREFORE,** Plaintiff prays for the following non-exhaustive relief, Compensatory damages in whatever amount he is found to be entitled; Exemplary and punitive damages in whatever amount he is found to be entitled; A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled; and, an award of interest, costs and reasonable attorney fees.

## COUNT-V
## VICARIOUS/RESPONDEAT SUPERIOR LIABILITY

68. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 above as if set forth in full herein.

69. Western Golf And Country Club was on actual and constructive notice of the manifestation of the foreseeable harm as Defendant Michael Montney was acting as an agent of the Defendant, Recon.

70. The Defendant Michael Montney was at all relevant times, employed by Western Golf And Country Club.

71. All such conduct occurred while acting within the course and scope of employment with Western Golf And Country Club and pursuant to actual and apparent authority created by virtue of employment with Western Golf And Country Club.

72. Defendant Michael Montney was acting at least in part to serve the interests of Western Golf And Country Club when committing the act of fraud upon the Plaintiff.

73. As a direct a proximate cause, Plaintiff suffered the injuries and damages as herein alleged.

74. Therefore, in addition to its own direct conduct, Western Golf And Country Club is also liable for the wrongful conduct of Defendant Michael Montney under the law of vicarious liability, including the doctrine of respondeat superior.

**WHEREFORE,** Plaintiff prays for the following non-exhaustive relief, Compensatory damages in whatever amount he is found to be entitled; Exemplary

and punitive damages in whatever amount he is found to be entitled; A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled; and, an award of interest, costs and reasonable attorney fees. ated:

September 30, 2021                                    Respectfully Submitted,


                                  **MUSSIN & SCANLAND, PLLC**


                                  /s/JERARD M. SCANLAND
                            **BY: JERARD M. SCANLAND(P74992)**
                                Attorneys for Plaintiff
                                13351 Reeck Court, Suite 5
                                Southgate, Michigan 48195
                                Phone: (734)-282-6037
                                Fax: (734)-447-5853
                                JScanland@milawoffices.com

## JURY DEMAND

The Plaintiff, **RASUL WARREN**, by his attorney the law firm of MUSSIN & SCANLAND, hereby makes a demand for a trial by jury.

Dated: September 30, 2021                           Respectfully Submitted,

**MUSSIN & SCANLAND, PLLC**

/s/JERARD M. SCANLAND
**BY: JERARD M. SCANLAND(P74992)**
Attorneys for Plaintiff
13351 Reeck Court, Suite 5
Southgate, Michigan 48195
Phone: (734)-282-6037
Fax: (734)-447-5853
JScanland@milawoffices.com